IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| REMBRANDT WIRELESS TECHNOLOGIES, LP,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 2:19-cv-00025-JRG<br><br>Hon. Rodney R. Gilstrap<br><br>**JURY TRIAL DEMANDED** |

### DEFENDANT APPLE'S MOTION TO STAY BASED ON CUSTOMER-SUIT EXCEPTION

**I.     INTRODUCTION**

In January and April 2019, Rembrandt filed three nearly identical cases alleging infringement of the same three claims from two related patents:  this case against Apple in the Eastern District of Texas, and two cases in the Central District of California against Broadcom and Qualcomm, respectively.[1]  In each, Rembrandt's infringement contentions are the same – that chipsets which provide "Bluetooth Enhanced Data Rate" functionality ("EDR" or the "Accused Functionality") infringe the two patents-in-suit.  Rembrandt alleges that Apple (and Broadcom and Qualcomm) infringe by including the Accused Functionality in chipsets as well as through any products (*e.g.*, iPhones) incorporating such chipsets.

In connection with this Motion, Apple is prepared to stipulate to be bound in this action by the final outcome of the C.D. California actions against Broadcom and Qualcomm.

---

[1] *Rembrandt Wireless Technologies, LP v. Broadcom Inc. and Broadcom Corp.,* No. 8:19-cv-00708-JLS-JDE (hereinafter "Broadcom Case"); *Rembrandt Wireless Technologies, LP v. Qualcomm Inc.,* No. 8:19-cv-00705-JLS-JDE (hereinafter "Qualcomm Case").

███████████████████████████████████████████, final resolution of Rembrandt's later-filed suits against the manufacturer defendants, Broadcom and Qualcomm, will resolve all issues of liability in this case. As such, under the "customer-suit exception," Apple moves to stay this action pending resolution of the later-filed Broadcom and Qualcomm cases.[2]

## II. STATEMENT OF FACTS

### A. The Parties and Procedural History

Rembrandt, a Pennsylvania company, sued Apple, a California company, on January 24, 2019. (Dkt. No. 1). Apple has answered, and on May 22, 2019, Apple moved to transfer venue to the Central District of California. (Dkt. No. 30). Briefing is now complete on that motion, and it is pending a hearing and a decision from the Court. This Court has transferred previous Rembrandt cases against Apple. *See Rembrandt Patent Innovations, LLC v. Apple, Inc.*, No. 2:14-cv-00867-JRG, Dkt. No. 17 (E.D. Tex. Oct. 27, 2014); *Rembrandt Patent Innovations, LLC v. Apple, Inc.*, No. 2:14-cv-00015-JRG, Dkt. No. 88 (E.D. Tex. Oct. 27, 2014). Discovery is in early stages (no depositions noticed or taken other than venue-related), and trial is set for June 1, 2020.

On April 15, 2019, Rembrandt filed separate complaints against Broadcom and Qualcomm in the Central District of California alleging infringement of the same three claims of the patents at issue in this action. The parties there are proceeding through the claim construction process, and the court has set a final pretrial conference for October 30, 2020.

### B. ███████████████████████████████████

By its complaint and P.R. 3-1 contentions, Rembrandt accuses Apple of infringement based on the nature of *any* Bluetooth EDR product. (Dkt. No. 1, ¶ 28) Rembrandt identifies numerous Apple products that allegedly support Bluetooth EDR. (Dkt. No. 1, ¶ 29)

---

[2] In so moving, Apple does not intend to forego the relief requested in its pending Motion to Transfer (Dkt. No. 30).

2

In its complaints against Broadcom and Qualcomm, Rembrandt acknowledges that the Accused Functionality is enabled by chipsets housed within the Apple products. (Broadcom Case, Dkt. No. 1, ¶¶ 28-29, 36 (Ex. 1); Qualcomm Case, Dkt. No. 1, ¶¶ 28-29, 36. (Ex. 2)).[3] Rembrandt's infringement allegations are word-for-word identical across the three complaints. (¶¶ 28, 36 in each of the complaints against Apple, Broadcom, and Qualcomm).



(Declaration of Michael Jaynes ("Jaynes Decl."), ¶ 4).

(Jaynes Decl., ¶ 5).

(Jaynes Decl., ¶ 5).

(Jaynes Decl., ¶ 5).

### C. Rembrandt Has Subpoenaed Non-Parties Broadcom and Qualcomm, Seeking Their Confidential Information for This Case.

On September 16, 2019, Rembrandt subpoenaed California-based chip designer companies Broadcom and Qualcomm seeking their confidential information for Rembrandt's use in this case. (Ex. 3; Ex. 4). Rembrandt did this, even though, as mentioned above, it separately sued Broadcom and Qualcomm in cases pending in the Central District of California. In its subpoenas, Rembrandt demands that Broadcom and Qualcomm produce to Rembrandt, among other things, their highly confidential source code relating to the Accused Functionality. (Ex. 3 at 8; Ex. 4 at 7-8). The parties best positioned to address an infringement case based on such code are Broadcom and Qualcomm, not Apple, as discussed further below.

---

[3] Exhibits are attached to the Declaration of Edward J. Mayle.

### D. Apple Agrees to Be Bound by the Broadcom and Qualcomm Cases

In connection with this motion, Apple agrees to be bound by the outcomes of the Central District of California cases as follows: (1) For accused Apple products in which the Accused Functionality is implemented ███████████████████████████, Apple agrees to be bound in this case by the final outcome in the litigation between Rembrandt and Broadcom in the Central District of California suit (No. 8:19-cv-708) on issues of infringement and validity, subject to a final determination in any action or proceeding, before final resolution of this case, that the asserted patent claims are invalid or unpatentable; (2) For accused Apple products in which the Accused Functionality is implemented ███████████████████████, Apple agrees to be bound in this case by the final outcome in the litigation between Rembrandt and Qualcomm in the Central District of California suit (No. 8:19-cv-705) on issues of infringement and validity, subject to a final determination in any action or proceeding, before final resolution of this case, that the asserted patent claims are invalid or unpatentable. A stipulation to this effect is attached. (Ex. 5). This stipulation accounts for all of the Accused Products in this case.

### III. ARGUMENT

Applying the customer-suit exception and the general stay factors compel the conclusion that a stay is in the interest of efficiency, judicial economy, and will secure the just, speedy, and inexpensive resolution of this action.

### A. Legal Standard – The Customer-Suit Exception

"Under the first-to-file rule, a district court may choose to stay, transfer, or dismiss a duplicative later-filed action." *Glob. Equity Mgmt. (SA) Pty. Ltd. v. Ericsson, Inc.*, 2017 WL 365398, at *7 (E.D. Tex. Jan. 25, 2017) (internal quotes omitted). The "customer-suit exception" is an exception to the first-to-file rule. *Id*. at *7. Under the customer-suit exception, "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Katz v. Lier Siegler, Inc.*, 909 F.2d 1459,

4

1464 (Fed. Cir. 1990). The exception is "based on the manufacturer's presumed greater interest in defending its actions against charges of patent infringement; and to guard against possibility of abuse." *Glob. Equity,* 2017 WL 365398, at *7 (quoting *Spread Spectrum Screenings LLC v. Eastman Kodak Co.,* 657 F.3d 1349, 1357 (Fed. Cir. 2011)). As the Federal Circuit explained in *Katz*, "'it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products.'" 909 F.2d at 1464 (quoting *Codex Corp. v. Milgo Elecs. Corp.,* 553 F.2d 735, 738 (1st Cir. 1977)).

In evaluating the customer-suit exception, courts consider three factors: "(1) whether the consumers in the first-filed action are mere resellers of products manufactured by the party in the second-filed action; (2) whether the customers in the first-filed action have agreed to be bound by any decision in the second-filed action, and; (3) whether the manufacturers in the second-filed action are the only source of the allegedly infringing activity or product." *Glob. Equity,* 2017 WL 365398, at *5 n.3 (internal quotes omitted). However, the "guiding principles in the customer suit exception cases are efficiency and judicial economy," *Spectrum Screenings,* 657 F.3d at 1357 (internal quotes omitted), and courts weigh "overall judicial efficiency" more than the three factors. *Glob. Equity,* 2017 WL 365398, at *5 n.3.

Additionally, in considering a motion to stay, courts evaluate: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and the trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Id.* at *10 (internal quotes omitted).

### B. The Customer-Suit Exception Factors Weigh in Favor of a Stay

#### 1. Rembrandt's Cases Against Broadcom and Qualcomm Will Resolve the Issues in This Case Against Apple

The first factor in the customer-suit analysis is whether a customer is a "mere reseller[]" of the manufacturer's products. *Glob. Equity,* 2017 WL 365398, at *5 n.3 (internal quotes omitted). When analyzing this factor, courts should assess whether the customer and manufacturer suits are "'so closely related that substantial savings of litigation resources can be expected.'" *Id.* at *10 (quoting *In re Google Inc.,* 588 F. App'x 988, 991 (Fed. Cir. 2014)). Courts should apply "a 'flexible approach'… regardless of whether a customer Defendant is *really* a reseller of another Defendant's technology." *Id.* (emphasis added) (quoting *In re Google,* 588 F. App'x at 991).

In doing so, they should consider whether the manufacturer case will moot or advance resolution of the "major premises" being litigated in the customer case. *Katz,* 909 F.2d at 1464 ("Although there may be additional issues involving the defendants in the [customer] action, their prosecution will be advanced if [the patentee] is successful on the major premises being litigated in [the manufacturer case], and may well be mooted if he is unsuccessful."); *Glob. Equity,* 2017 WL 365398, at *10 (quoting *Katz* and staying the customer case despite patentee's argument that the customer was not a reseller); *Cellular Commc'ns Equip., LLC v. Apple Inc.,* No, 6:14-CV-251, 2016 WL 6884648, at *2 (E.D. Tex. Aug. 26, 2016) (rejecting argument that the customers did "more than merely resell" even though the customers had to "configure the device in a way that [was] compatible with their network" and took "the extra step of bundling" the accused devices "with service plans and imposing standards which must be maintained in order to use the device" because it did not "change the fact that they [did] not modify or alter the patented technology at issue").

For this factor, courts should consider the burden imposed on the customer, for "the 'first-to-file' rule exists to avoid, if possible, imposing the burdens of trial on the customer, for it is the

manufacturer who is generally the 'true defendant' in the dispute." *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014); *see also Glob. Equity*, 2017 WL 365398, at *10; *Saint Lawrence Commc'ns, LLC v. Apple Inc.*, No. 2:16-cv-82-JRG, 2017 WL 3712912, at *1 (E.D. Tex. July 12, 2017) (severing and staying case against customer and reasoning that "the burdens of litigation should not be imposed on the customer."); *Opticurrent, LLC v. Power Integrations, Inc.*, No. 2:16-CV-325-JRG, 2016 WL 9275395 (E.D. Tex. Oct. 19, 2016) (severing and staying case against customer and reasoning that "the burdens of trial should not be unnecessarily imposed upon its customer.")

Here, the resolution of the cases against Broadcom and Qualcomm will moot or at least materially advance the major premises being litigated in the case against Apple. Rembrandt uses identical language to accuse all three Defendants of infringing its patents that allegedly cover any and all Bluetooth EDR specifications. (*Compare* ¶¶ 28, 36 in all three Complaints). Rembrandt does not make a more specific infringement allegation than this, other than naming particular Bluetooth EDR products, in any of the complaints. Accordingly, and particularly in view of Apple's proposed stipulation, there should be no dispute that resolution of infringement allegations in the Broadcom and Qualcomm cases will resolve the infringement allegations in the Apple case and a substantial savings of litigation resources can be expected if the case against Apple is stayed. Indeed, as mentioned, Apple is prepared to stipulate to be bound in this action by the final outcome of the C.D. California actions against Broadcom and Qualcomm.

A stay will also alleviate the burden imposed on Apple because Broadcom and Qualcomm are the "true defendant[s]" in this dispute, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Dkt. No. 30, p. 25 (Jaynes Decl. ¶ 11) (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓); *id.*

7

(Jaynes Decl. ¶ 12) (); Dkt. No. 30, p. 36 (Masood Decl. ¶ 11) ().

 and that Broadcom and Apple have common counsel in-part do not change this; indeed, these facts serve as further proof that Broadcom and Qualcomm are the "true defendants" here. Rembrandt's decision to subpoena Broadcom and Qualcomm in connection with this suit—despite having parallel actions currently proceeding in the Central District of California—proves that even Rembrandt knows . Proceeding with this action would . This is an unnecessary burden on Apple given that Rembrandt has actually sued Broadcom and Qualcomm in the forum of *Rembrandt's* own choosing (*i.e.*, the Central District of California), and resolution of those cases will resolve infringement claims against Apple. Thus, this factor favors the application of the customer-suit exception.

### 2. Apple Has Agreed to Be Bound by the Outcomes of the Broadcom and Qualcomm Cases,

Courts also consider "whether the consumers in the first-filed action have agreed to be bound by any decision in the second-filed action." *Glob. Equity,* 2017 WL 365398, at *5 n.3 (internal quotes omitted). Here, Apple has agreed to be bound in the attached stipulation. (Ex. 5). This stipulation in this case.

Given Apple's agreement, this factor also favors the application of the customer-suit exception. *See CyWee Group Ltd. v. Huawei Device Co. Ltd.*, No. 2:17-CV-495, 2018 WL 4002776, at *4 (E.D. Tex. Aug. 22, 2018) ("Importantly, Huawei has agreed to be bound by the

infringement determination in the Delaware action. Therefore, once the Delaware action is resolved, there presumably will be nothing left for this Court to adjudicate as to whether the Nexus 6P infringes the '438 and '978 patents.") (internal citation omitted).

### 3. Rembrandt ▮▮▮ Accuses Broadcom and Qualcomm Devices of Infringing

The final factor asks "whether the manufacturers in the second-filed action are the only source of the allegedly infringing activity or product." *Glob. Equity,* 2017 WL 365398, at *5 n.3 (internal quotes omitted). Rembrandt asserts claims ▮▮▮ against Broadcom and Qualcomm ▮▮▮). (Jaynes Decl., ¶ 5). While ▮▮▮ ▮▮▮, this factor is not dispositive, particularly in light of Apple's stipulation to be bound ▮▮▮ ▮▮▮.

Rembrandt's infringement contentions against Apple rely *entirely* on allegations about generic "Bluetooth Specifications" that Rembrandt asserts apply equally to all accused chips: Broadcom's, Qualcomm's, and Apple's. *See, e.g.,* Dkt. No. 1, ¶ 28; *compare* both other Complaints, ¶ 28. Thus, it is not surprising that Rembrandt made the exact same infringement allegations against Broadcom and Qualcomm in the respective pending cases in the Central District of California as it did against Apple in this case. Rembrandt does not make any separate infringement argument depending on what type of chip allegedly performs the infringing activity inside of, for example, an accused iPhone. Therefore, at least according to Rembrandt's infringement contentions, ▮▮▮ ▮▮▮. It would be a waste of judicial and party resources to litigate Rembrandt's generic infringement claims in three different cases across two different District Courts. This is especially so because, as discussed above, ▮▮▮

9

██████████████████████████

██████████████████. (Jaynes Decl. ¶ 5).

### C. Staying the Case Against Apple is Consistent with the General Stay Factors

#### 1. A Stay Will Not Unduly Prejudice Rembrandt or Present a Clear Tactical Disadvantage

The first stay factor asks "whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *Glob. Equity,* 2017 WL 365398, at *10 (internal quotes omitted). This factor weighs in favor of a stay because Rembrandt has already sued Broadcom and Qualcomm separately, and the issues relevant to the Apple suit will be heard in the Broadcom and Qualcomm suits, namely, infringement and validity. *Id.* Moreover, if Rembrandt prevails in the Broadcom and Qualcomm actions, it "will still be able to pursue the customer patent suits[]" against Apple, which has agreed to be bound by the decisions in those actions. *Id.*

Rembrandt will not be disadvantaged from an evidentiary perspective because ████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

Further, Rembrandt can seek discovery from Apple in the California cases, if it desires, under Federal Rule of Civil Procedure 45.

Finally, this factor favors a stay because the Patents-in-Suit have expired and Rembrandt therefore cannot obtain injunctive relief against Apple (or Broadcom or Qualcomm) even if Rembrandt were to prevail in any of its cases. In any event, Rembrandt "does not directly compete against [Apple]" and a stay will only "delay any remedies that it may be entitled to." *Advanced Mktg. Sys., LLC v. CVS Pharmacy, Inc.,* No. 6:15-CV-134-JRG-KNM, 2016 WL 3277258, at *2 (E.D. Tex. June 14, 2016).

### 2. A Stay Will Simplify the Issues in Question Because the Broadcom and Qualcomm Actions Will Resolve the Liability Allegations Against Apple

The second factor considers "whether a stay will simplify the issues in question and trial of the case." *Glob. Equity,* 2017 WL 365398, at *10 (internal quotes omitted). A stay will simplify the issues in this case because it will resolve infringement and invalidity. As explained above in Section II(D), in connection with this motion, Apple agrees to be bound by the outcomes of the Central District of California cases in relation to infringement and invalidity. As such, a stay would also reduce the burden on all parties and the Court. Rembrandt could resolve all of its disputes with Broadcom, Qualcomm, and Apple in two proceedings instead of three, and in a single district instead of two, saving voluminous litigation expenses for both Rembrandt and Apple. Additionally, the burden on the Court's limited resources is reduced by eliminating unnecessary hearings and a liability trial for Apple. Accordingly, this factor also favors a stay.

### 3. Discovery Is Not Complete and Final Pretrial Conference Dates Have Been Set in the C.D. California Actions

The final stay factor evaluates "whether discovery is complete and whether a trial date has been set." *Glob. Equity,* 2017 WL 365398, at *10 (internal quotes omitted). Here, this case is procedurally in its early stages with a pending motion to transfer venue. Discovery is far from complete (indeed, the only depositions taken to date relate to Apple's pending motion to transfer venue) and a *Markman* hearing has not yet been held. While a jury selection date has been set (June 1, 2020), in the parallel C.D. California actions, final pretrial conferences are now scheduled just a few months later on October 30, 2020. *See* Exhs. 6 and 7. Hence, this final factor also weighs in favor of staying this action.

11

IV. **CONCLUSION**

For the foregoing reasons, Apple respectfully submits that this action should be stayed pending the resolution of Rembrandt's claims against third-party Bluetooth chip designers Broadcom and Qualcomm, in cases Rembrandt filed in the Central District of California.

Dated: November 1, 2019

Respectfully submitted,

/s/ David E Sipiora
David E. Sipiora
(CO Bar No. 29759)
(Eastern District of Texas Member)
Edward J. Mayle
(CO Bar No. 50920)
(*pro hac vice*)
KILPATRICK TOWNSEND & STOCKTON LLP
1400 Wewatta Street Suite 600
Denver, CO 80202
Telephone: (303) 571-4000
Facsimile: (303) 571-4321
tmayle@kilpatricktownsend.com
dsipiora@kilpatricktownsend.com

Russell A. Korn
(GA Bar No. 428492)
(Eastern District of Texas Member)
Andrew N. Saul
(GA Bar No. 627607)
(Eastern District of Texas Member)
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street NE Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
rkorn@kilpatricktownsend.com
asaul@kilpatricktownsend.com

Melissa R. Smith
melissa@gillamsmithlaw.com
GILLAM & SMITH LLP
303 South Washington Avenue
Marshall, TX 75670
Telephone: (903) 934-8450

Facsimile: (903) 934-9257

James R. Batchelder
(CA Bar No. 136347)
(Eastern District of Texas Member)
Mark D. Rowland
(CA Bar No. 157862)
(Eastern District of Texas Member)
Gabrielle E. Higgins
(CA Bar No. 163179)
(Eastern District of Texas Member)
ROPES & GRAY LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303-2284
Telephone: (650) 617-4000
Facsimile: (650) 617-4090
James.Batchelder@ropesgray.com
Mark.Rowland@ropesgray.com
Gabrielle.Higgins@ropesgray.com

Josef B. Schenker
(NY Bar No. 4935185)
(Eastern District of Texas Member)
Jolene L. Wang
(NY Bar No. 5462619)
(Eastern District of Texas Member)
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
Josef.Schenker@ropesgray.com
Jolene.Wang@ropesgray.com

*Counsel for Defendant Apple. Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on November 1, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ David E Sipiora*



## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Apple has complied with the meet and confer requirement in Local Rule CV-7(h).  This motion is opposed.  The personal conference required by Local Rule CV-7(h) was conducted on October 23, 2019 via telephone conference.  No agreement could be reached because the parties disagreed on the merits.  Discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

*/s/ David E Sipiora*