██████████████████████████

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| REMBRANDT WIRELESS TECHNOLOGIES, LP, | § § § | |
| Plaintiff, | § § | Case No. 2:19-cv-00025-JRG |
| v. | § § | |
| APPLE INC., | § § | **Jury Trial Requested** |
| Defendant. | § § § § | |

_____ §

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT APPLE'S
MOTION TO STAY BASED ON CUSTOMER-SUIT EXCEPTION**

████████████████████████████████

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     BACKGROUND ..................................................................................................... 2

    A.      Consumer Device Litigation in Texas and Chipset Litigation in California. ......... 2

    B.      Apple's Relevant Knowledge of ████████████████. ...................... 3

III.    ARGUMENT ........................................................................................................... 4

    A.      The Customer-Suit Exception Is Inapplicable and Does Not Support a Stay......... 4

        1.      ████████████████████████. ........................ 7

        2.      Apple Is Far from a "Mere Reseller" █ ████████. .................. 8

        3.      Apple Is Unwilling to Be Bound by Rulings in California...................... 10

    B.      The "Flexible Approach" Weighs Against a Stay Due to the Unique Issues Between Chipsets and Consumer Devices............................................................. 12

    C.      The General Stay Factors Advise Against Staying This Case.............................. 14

IV.     CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Cellular Commc'ns Equip., LLC v. Apple Inc.*,
   2016 WL 6884648, at *2 (E.D. Tex. Aug. 26, 2016)....................................................... 6, 9

*CyWee Grp. Ltd. v. Huawei Device Co.*,
   2018 WL 4002776, at *4 (E.D. Tex. Aug. 22, 2018)....................................................... 6, 12

*Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*,
   2016 WL 1659924, at *2 (E.D. Tex. Apr. 26, 2016) ....................................................... 5, 13

*Glob. Equity Mgmt. (SA) Pty. Ltd. v. Ericsson, Inc.*,
   2017 WL 365398, at *10 (E.D. Tex. Jan. 25, 2017) ....................................................... 6, 13

*Glob. Equity Mgmt. (SA) Pty. Ltd. v. Ericsson, Inc.*,
   2017 WL 365398, at *7 (E.D. Tex. Jan. 25, 2017) ............................................................... 6

*Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*,
   2017 WL 2869332, at *1 (E.D. Tex. May 18, 2017) ............................................................ 14

*In re Google Inc.*,
   588 F. App'x 988, 991 (Fed. Cir. 2014).............................................................................. 6

*In re Nintendo of Am., Inc.*,
   756 F.3d 1363, 1365-66 (Fed. Cir. 2014)............................................................................ 6

*Infinite Data LLC v. Home Depot U.S.A. Inc.*,
   2014 WL 265704, at *2 (D. Del. Jan. 23, 2014) ................................................................ 11

*Kahn v. General Motors Corp.*,
   889 F.2d 1078, 1081 (Fed. Cir. 1989)...................................................................... 4, 5, 8

*Katz v. Lear Siegler, Inc.*,
   909 F.2d 1459, 1463, 1464 (Fed. Cir. 1990)...................................................................... 6, 7

*Merial Ltd. v. Cipla Ltd.*,
   681 F.3d 1283, 1299 (Fed. Cir. 2012).................................................................................. 4

*NFC Tech., LLC v. HTC Am.*,
   2014 WL 3867963, at *1 (E.D. Tex. Aug. 5, 2014).............................................................. 8

*Opticurrent, LLC v. Power Integrations, Inc.*,
   2016 WL 9275395, at *5 (E.D. Tex. Oct. 19, 2016)........................................................... 6, 9

*Rembrandt Wireless Techs., LP v. Broadcom Inc.*,
   No. 8:19-cv-00708 (C.D. Cal.) ............................................................................................ 2

*Rembrandt Wireless Techs., LP v. Qualcomm Inc.*,
   No. 8:19-cv-00705 (C.D. Cal.).............................................................................................. 2

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*,
   853 F.3d 1370 (Fed. Cir. 2017)........................................................................................... 3

*Saint Lawrence Commc'ns LLC v. Apple Inc.*,
 2017 WL 3712912, at *1-*2 (E.D. Tex. July 12, 2017)........................................................ 6, 9

*Soverain Software LLC v. Amazon, Inc.*,
 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005). ...................................................................... 14

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
 657 F.3d 1349, 1358 (Fed. Cir. 2011). ............................................................................ 5, 6

*Tegic Commc'ns Corp. v. Board of Regents of Univ. of Tex. Sys.*,
 458 F.3d 1335, 1343 (Fed. Cir. 2006)).......................................................................... 7, 8, 11

*Vantage Point Tech., Inc. v. Amazon.com, Inc.*,
 2015 WL 123593, at *2 (E.D. Tex. Jan. 6, 2015) .......................................................... 7, 8, 11

███████████████████████████████

## I.    INTRODUCTION

From 2013 to 2018, this Court presided over Rembrandt's patent infringement litigation against Samsung and BlackBerry (2:13-CV-213-JRG, the "Samsung Litigation") based on consumer devices that practice certain Bluetooth standards. Rembrandt's litigation against Defendant Apple Inc. ("Apple") involves the same patents, similar consumer devices, and the same Bluetooth standards.

Unsatisfied with Rembrandt's legitimate reasons for bringing suit in this District, Apple filed a motion to transfer this case to California, the location of Rembrandt's litigation against Broadcom and Qualcomm (collectively, the "Chipset Defendants"), which Rembrandt did not file in this District because venue was not proper. Now, seven months before the trial date (and after the deadline to substantially complete document production), Apple seeks to stay this entire case.

Apple's motion to stay erroneously relies on an exception to the first-to-file rule that has no applicability in this case. The customer-suit exception prevents patentees from filing a first suit against a retailer to avoid litigation against manufacturers who are responsible for creating infringing products. That is not the case here, because ███████████████████████ ███████████████████, and Rembrandt continues to prosecute claims against Broadcom and Qualcomm in California.

The fact that ███████████████████ should preclude a stay. It is axiomatic that ████████████████████████████████████, and Rembrandt is entitled to prosecute claims for Apple's independent liability, which would not be possible under a stay. ██████████████████████████

██████████████████████████

██████████████████████████

██████████████████████████

████████████████████████████████████████████

████████████████████████████, Apple cannot satisfy the touchstone of the customer-suit exception—whether resolving manufacturer litigation would dispose of claims against a customer.

Apple also ignores the importance of distinct factual issues in the California litigation. Under Apple's stipulation, Apple's liability may be premised on unique noninfringement defenses that are otherwise unavailable to Apple.  Therefore, no justification exists to stay the entire case here, where the fact issues are not only distinct from those in California, but also closely related to this Court's knowledge from prior litigation.

## II.    BACKGROUND

### A.    Consumer Device Litigation in Texas and Chipset Litigation in California.

Rembrandt filed its complaint against Apple on January 24, 2019.  (Dkt. No. 1.)  Neither Broadcom nor Qualcomm appears to have a regular and established place of business in this District, so Rembrandt filed complaints against the Chipset Defendants in the Central District of California on April 15, 2019.[1]

Rembrandt accuses Apple products of infringing U.S. Patent Nos. 8,457,228 and 8,023,580.  (*Id.*)  The accused products are electronic devices that Apple sells to ordinary consumers, such as mobile phones, televisions, and headphones.  (Dkt. No. 57-24.)  In the prior Samsung Litigation, Rembrandt asserted the same patents and accused consumer devices of nearly identical scope.  (*See generally* Pl.'s Opp. to Mot. to Transfer, Dkt. No. 56, at 12-14.)  There, the jury returned a verdict in favor of Rembrandt for Samsung products, this Court denied JMOL, and the Federal Circuit affirmed as to claim construction, infringement, and validity.  *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 853 F.3d 1370 (Fed. Cir. 2017).

---

[1] *Rembrandt Wireless Techs., LP v. Broadcom Inc.*, No. 8:19-cv-00708 (C.D. Cal.); *Rembrandt Wireless Techs., LP v. Qualcomm Inc.*, No. 8:19-cv-00705 (C.D. Cal.).

██████████████████████████████████████████████

Although Rembrandt asserts the same claims in the California litigation, the Broadcom and Qualcomm products implicate different issues because they are different in scope. All of the Broadcom and Qualcomm products accused in California are chipsets ██████████████████ ████████████████████. (Dkt. No. 77-3 ¶¶ 8, 29; Dkt. No. 77-4 ¶¶ 7, 28.) Because Broadcom and Qualcomm's customers are manufacturers ███████, while customers of Apple products are ordinary consumers, Rembrandt asserts an entirely different basis for indirect infringement in California. (*See* Ex. A, at 3-4.)

Discovery is ongoing in this case, though the October 21, 2019 deadline to substantially complete document production has now passed. (Dkt. No. 39, at 3.) Trial is set for June 1, 2020. (*Id.* at 1.) The Central District of California has not set a trial date. (Dkt. No. 77-6; 77-7.) A final pretrial conference is set in California for October 30, 2020, nearly five months after trial is expected to begin in this Court. (*Id.*)

**B.     Apple's Relevant Knowledge of** ██████████████████████.

The accused Apple products use Bluetooth ████████████████████████████ ████████████     (Dkt. No. 77-1, Decl. of Michael Jaynes, ¶ 5.)

Apple disavows technical knowledge relating ███████████████████████ but glosses over Apple's ***exclusive*** understanding of how Apple ██████████████████ ██████████     In Apple's initial disclosures, Apple employees are the only individuals identified as having product-specific knowledge. (Ex. B, at 4-5.) Among these disclosed employees are ████████████████████████████████████████ ██████████ (*See, e.g.*, Ex. C, at 1, 5, 23, 39-40.) Deposition testimony from Apple's corporate representative, Michael Jaynes, confirms that Apple has engineering teams █████████████ ████████████████████████████ (Ex. D, Jaynes Dep., at 17:17-21, 21:19-22:6, 65:7-66:15.)

███████████████████████████████████████████

Apple's document production also confirms that its engineers have specialized, unique and relevant knowledge, from both hardware and software perspectives.  For example, Apple engineers provide technical ████████████████████████ (Ex. E), which not only ███████████ ████████████████████████████ (*id.* at 51),  but also ███████ ████████████████████████████ (*See id.* at 13.)  Apple also ██████ ████████████████████████████ (Ex. C, at 30; Ex. F, at APL-REMBR_01054407-4412.)    Furthermore,  Apple  itself  submits  declarations  to  the  Bluetooth Special  Interest  Group,  which  represent  that  the  accused  products  comply  with  Bluetooth specifications.  (*See, e.g.*, Ex. G.)

Finally, neither Broadcom nor Qualcomm has any relevant technical knowledge ███████

████████████████████████████████████████████

████████████████  (Dkt. No. 30-1, Jaynes Decl., ¶¶ 13.)  Although Apple refers to data from the years 2013-2018 to calculate that ████ of relevant products █████████████████ ████  (Dkt. No. 77-1 ¶ 5), products  with  Apple-designed  Bluetooth  chips  first  debuted  in September 2016.  (Ex. H, at 1.)

## III.    ARGUMENT

### A.    The Customer-Suit Exception Is Inapplicable and Does Not Support a Stay.

The customer-suit exception is an exception to the general rule that favors the forum of the first-filed action.[2]  *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989).  The exception typically arises in circumstances that are not present here: where "a patentee filed an action against the retailers of an accused product, after which the manufacturer of the product filed

---

[2] "The 'first-to-file' rule is a doctrine of federal comity . . . that favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012).

a declaratory judgment action against the patentee in a different forum." *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, 2016 WL 1659924, at *2 (E.D. Tex. Apr. 26, 2016) (Bryson, J., sitting by designation) (citations omitted); *accord Kahn*, 889 F.2d at 1081 (describing the declaratory judgment fact pattern as one of two situations that may jusify a departure from the "general rule" of priority to the first-filed action).

On occasion, district courts have conducted the customer-suit analysis under different facts. However, the Federal Circuit's guidance in *Spread Spectrum* shows that the analysis applies to narrow circumstances, rather than any set of facts that involve parallel suits against a manufacturer and customer. Specifically, the *Spread Spectrum* court declined to apply the exception because a manufacturer did not file a separate declaratory judgment action. *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011). The Federal Circuit reasoned that the exception was inapplicable because the facts did not present "a traditional first-to-file scenario," and therefore "the underlying policy considerations associated with a 'race to the courthouse,' such as deterring forum shopping, [were] not implicated." *Id.*

Because first-to-file considerations are also absent here, Apple's reliance on the customer-suit exception is misplaced. Rembrandt did not file suit against a retailer to eliminate the possibility of manufacturer litigation in California, as the ongoing litigation in California makes clear. Under this posture, the first-to-file rule does not prevent a manufacturer with "presumed greater interest [from] defending its actions against patent infringement."[3] *See Glob. Equity Mgmt. (SA) Pty. Ltd. v. Ericsson, Inc.*, 2017 WL 365398, at *7 (E.D. Tex. Jan. 25, 2017) (quoting *Spread Spectrum*, 657 F.3d at 1358) (internal quotation marks omitted). Moreover, in its motion, Apple

---

[3] Neither Broadcom nor Qualcomm filed a declaratory judgment action in the Samsung litigation, despite having every opportunity to do so.

does not assert that Rembrandt has forum shopped. Even if forum shopping concerns were relevant, Apple cannot ignore legitimate reasons for filing suit in separate districts, such as restrictions under venue law and this Court's familiarity with the asserted patents and accused technology. *See Kahn*, 889 F.2d at 1081 (departure from first-to-file rule justified when "forum shopping ***alone*** motivated the choice of sites for the first suit" (emphasis added)).

Accordingly, as in *Spread Spectrum*, the first-to-file rule is not at issue, so the Federal Circuit's jurisprudence for an exception to that rule should not constrain the Court's analysis. *See* 657 F.3d at 1358. Tellingly, in ***all*** of Apple's authorities that apply the customer-suit analysis to reach a stay, the second-filed manufacturer action was a declaratory judgment action.[4] This uniformity confirms the narrow applicability of the exception, which the Court should not expand without good reason.

Even if the customer-suit exception were applicable here, the facts would not merit a stay. The "primary question" under the exception "is whether the issues and parties are such that the disposition of one case would be dispositive of the other." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1463 (Fed. Cir. 1990). The Federal Circuit considers three factors that are probative of

---

[4] *See, e.g., Katz v. Lier Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (manufacturer brought second-filed declaratory judgment action); *In re Google Inc.*, 588 F. App'x 988, 991 (Fed. Cir. 2014) (*same*); *Glob. Equity Mgmt. (SA) Pty. Ltd. v. Ericsson, Inc.*, 2017 WL 365398, at *10 (E.D. Tex. Jan. 25, 2017) (*same*); *CyWee Group Ltd. v. Huawei Device Co. Ltd.*, 2018 WL 4002776 (*same*).

Other authorities in Apple's motion invoke certain principles from the customer-suit exception but do not actually conduct a customer-suit analysis for the purpose of deciding a stay. *See, e.g., In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365-66 (Fed. Cir. 2014) (considering "general principles" from customer-suit exception in the context of ***transfer under § 1404(a) and severance***). *See also, e.g., Cellular Commc'ns Equip., LLC v. Apple Inc.*, 2016 WL 6884648, at *2 (E.D. Tex. Aug. 26, 2016) (citing *In re Nintendo* and considering principles from customer-suit exception under analysis for ***severance***); *Saint Lawrence Commc'ns LLC v. Apple Inc.*, 2017 WL 3712912, at *1-*2 (E.D. Tex. July 12, 2017) (*same*); *Opticurrent, LLC v. Power Integrations, Inc.*, 2016 WL 9275395, at *5 (E.D. Tex. Oct. 19, 2016) (*same*).

████████████████████████████████████████████████████████

whether a stay would be efficient in customer-suit exception cases. *Vantage Point Tech., Inc. v. Amazon.com, Inc.*, 2015 WL 123593, at *2 (E.D. Tex. Jan. 6, 2015) (citing *Tegic Commc'ns Corp. v. Board of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006)). Contrary to Apple's positions, ***none*** of those three factors support a stay.

### 1. ████████████████████████████████████████

One factor in the customer-suit analysis examines "whether the manufacturers in the second-filed action are the ***only*** source of the allegedly infringing activity or product." *Id.*, at *2 (citing *Tegic*, 458 F.3d at 1343) (emphasis added). That cannot be the case here because the accused products include ████████████████████████████████████████

Apple diminishes the importance of ██████████████████████ proposing a stipulation that attaches Apple's liability to infringement outcomes for Broadcom chipsets.[5] The stipulation is ambiguous and provides no assurance that Apple is actually bound by any outcome in California. *See infra* Section III.A.3. Furthermore, no justification exists for this proposal because infringement issues for ███████████████ are entirely distinct. As a result, the stipulation would deprive Rembrandt of the right to independently litigate the infringement of ███████████[6] In addition, while Apple stresses that ███████████████████ sold in the years 2013-2018 contain ███████████████████, that ████████ is neither insignificant on its face, nor representative of the importance of those products. (Ex. H (first products with ████████████████

---

[5] Notably, Apple's stipulation does not make practical sense because Apple-designed chipsets are primarily used in audio devices, such as headphones. Other accused audio devices use chipsets from *Qualcomm*, not Broadcom. (Dkt. No. 30-1, Jaynes Decl., ¶¶ 12-13.)

[6] For example, if Broadcom's proprietary designs do not practice the claims, while Apple's do, a stay and stipulation would provide Apple with an infringement defense to which it would not normally be entitled.

████████████████████████████████████████████████████

███ announced in September 2016).)

While Apple observes under this factor that Rembrandt's infringement contentions in California are based on the same Bluetooth specifications, that observation is hardly probative of the California litigation's ability to decide infringement for Apple products. Independent fact issues exist for devices and underlying components, and Apple's own conduct may be relevant to a finding of infringement for its devices.[7] Apple has not offered evidence that precludes the relevance of its own conduct. Indeed, no such evidence could exist for ████████████████ that are entirely beyond the scope of Broadcom and Qualcomm's activities.

Because the Chipset Defendants are not the only manufacturers at issue, resolving the California litigation will not dispose of infringement claims against Apple, and this factor cannot support a stay under the customer-suit exception.

   2. **Apple Is Far from a "Mere Reseller" of** ████████████████

The customer-suit analysis also examines "whether the customer-defendant in the first-filed case is merely a reseller" of an accused product. *Vantage Point*, 2015 WL 123593, at *2 (citing *Tegic*, 458 F.3d at 1343). When defendants are mere resellers, "the disposition of the manufacturer suit would be determinative of the issues in the customer suit." *NFC Tech., LLC v. HTC Am.*, 2014 WL 3867963, at *1 (E.D. Tex. Aug. 5, 2014) (citing *Kahn*, 889 F.2d at 1081-82).

Few of the authorities cited by Apple under this factor actually found that customer-defendants were mere resellers, and ***none*** support the finding that Apple is a mere reseller of ████████████████████████████████ *See Saint Lawrence Commc'ns LLC v. Apple*

---

[7] There are numerous factual differences that distinguish ████████████████████████ ████████████████ For example, the final infringement analysis will include review of each ████████████████ To the extent that there are differences in the source code, it is possible for those differences to play a role in the infringement findings.

██████████████████████████████

*Inc.*, 2017 WL 3712912, at *2 (E.D. Tex. July 12, 2017) (customer-defendants were wireless carriers who testified that they "resell the phone, playing ***no role*** in the development, design, or implementation of the relevant software code" (emphasis added)); *Cellular Commc'ns Equip., LLC v. Apple Inc.*, 2016 WL 6884648, at *2 (E.D. Tex. Aug. 26, 2016) (wireless carriers resold phones and "[did] not modify or alter the patented technology at issue, which is the source code on the baseband chip"); *Opticurrent, LLC v. Power Integrations, Inc.*, at *5 (E.D. Tex. Oct. 19, 2016) *and* Ex. I (plaintiff explicitly conceding that defendant was nothing more than "a distributor or reseller of the accused products.").

While the carrier defendants in *Saint Lawrence* and *Cellular Commc'ns* offered compelling evidence that they had ***no*** knowledge of the technology at issue, Apple makes no analogous representation. Despite Apple's emphasis on ████████████████████████ ███████████ a finding of infringement in this case would require *Apple's* products ████ ████████████████████████████████ to include capabilities recited by the apparatus claims. Yet Apple has not foreclosed the relevance of Apple's own efforts to ████████████ ████████████. Compared with statements from the *Saint Lawrence* and *Cellular Commc'ns* defendants, Apple only disavows a specific carveout of knowledge that is relevant to this case.[8]

The reason for this carveout is clear: Apple cannot deny the relevance of ████████████ ██████████. As a practical matter, Apple would █████████████████████████

---

[8] *Compare, e.g.*, Mot. at 10 ("Broadcom and Qualcomm are responsible for the design and development of those chips, and Apple has ***limited*** knowledge of the technical details." (emphasis added)) *and* (Dkt. No. 30-2, Masood Decl., ¶11) ("The detailed structure and operation of the Broadcom chips and their related source code and schematic diagrams are highly confidential and proprietary to Broadcom") *with Cellular Commc'ns*, 2016 WL 6884648, at *2 (***plaintiff's own expert*** testified that "Qualcomm is the only entity that has access to the point where they can disable or enable select functionality within a chip and not the individual carriers . . . .").



. Documents produced by Apple also confirm that chipsets are not off-the-shelf components that are simply repackaged into consumer devices. For example, Apple has a significant role in ███████████████████████

███████████████████████, in which Apple's engineers bring their own technical Bluetooth expertise to bear ███████████████████████.

(*See, e.g.*, Ex. E, at 13-53 ████████████████████

███████████████████████). In addition, Apple's

███████████████████████ are not a trivial matter. For example, Apple ████

███████████████████████

(Ex. C, at 30; Ex. F, at APL-REMBR_01054407-4412.) ████████████

███████████████████████

███████████████████. (*See* Ex. F, at APL-REMBR_01054408.)

Accordingly, determining Apple's liability ████████████████ will require the Court to evaluate Apple's own conduct, showing that the issues in the California litigation are not dispositive of infringement. The "mere reseller" factor does not favor a stay.

### 3.    Apple Is Unwilling to Be Bound by Rulings in California

Apple purportedly agrees "to be bound by any decision" in the California litigation. The caveats in Apple's proposed stipulation suggest otherwise:

> For the accused Apple products in which the accused Bluetooth EDR functionality is implemented by a chip provided by Apple or Broadcom, Apple agrees to be bound in this case by the ***final outcome*** in the litigation between Rembrandt and Broadcom in the Central District of California suit (No. 8:19-cv-708) on issues of infringement and validity, ***subject to a final determination in any action or proceeding before final resolution of this case, that the asserted patent claims are invalid or patentable***."[9]

---

[9] Apple's stipulation for Qualcomm chipsets includes the same terms. (Dkt. No. 77, Ex. 5)

(Dkt. No. 77, Ex. 5 (emphasis added).)  These statements are too indeterminate to represent an "[agreement] to be bound by *any* decision in favor of the patent owner."  *Vantage Point*, 2015 WL 123593, at \*2 (citing *Tegic*, 458 F.3d at 1343).

First, the scope of "final outcome" is ambiguous.  The stipulation provides no clarity about the binding effect of non-final judgments that would streamline issues for trial and shape this Court's ultimate disposition.  Apple would likely attempt to avoid those judgments, for example, if a Chipset Defendant settled before trial.  Furthermore, vagueness notwithstanding, an agreement to observe "the final outcome" reveals an intent to evade any "outcome" that is not "final."  These contingencies tend to undermine judicial economy, not promote it.

Second, by preserving the effects of validity challenges in other actions or proceedings, Apple shows no intent to be bound by adverse validity outcomes in California.  The illusory nature of the validity stipulation is further evidenced by Apple's three petitions for *inter partes review*, filed days after it moved for a stay.  (Ex. J.)  This absence of an intent to be bound diminishes the value of Apple's stipulation.  *See Infinite Data LLC v. Home Depot U.S.A. Inc.*, 2014 WL 265704, at \*2 (D. Del. Jan. 23, 2014) (denying motion for stay for certain defendants that did not agree to be bound by validity decisions).  In addition, the longwinded caveats for validity would be unnecessary if Apple were actually convinced that a "final outcome" in California could moot the issues in this case.  Instead, Apple preemptively reserves rights that would not exist for the Chipset Defendants because it recognizes that even a "final outcome" would not resolve issues that must be litigated before this Court.

Third, the stipulation is silent about decisions on chipset damages.  Yet Apple offers no explanation why damages-related decisions would not be relevant if Apple is indeed a "mere reseller."  All of these carveouts indicate that Apple does not intend to be bound by adverse

11

outcomes against the Chipset Defendants.

Apple cites the *CyWee* holding, but that conclusion was premised on the likelihood that resolving manufacturer claims would dispose of the customer claims. That premise is missing here as there are potential resolutions of the claims against Broadcom that would not resolve the claims against Apple. *See infra* Section III.B. (describing unique defenses raised by Broadcom). Moreover, the customer in *CyWee* offered ***unrebutted*** evidence that it could not address the infringement allegations because the customer did not "develop, maintain, or update" the accused technology. *CyWee Grp. Ltd. v. Huawei Device Co.*, 2018 WL 4002776, at *4 (E.D. Tex. Aug. 22, 2018) (describing evidence that manufacturer was the exclusive developer of relevant algorithms for the "Nexus 6P" device). Based on this evidence, the court found that resolving infringement for the manufacturer would leave nothing to adjudicate for the customer. *See id.* Apple cannot maintain that position here, given that it has ***exclusive*** knowledge that is relevant to this case. *See supra* Section III.A.1.

The noncommittal stipulation was likely drafted with the understanding that significant issues will remain, even after the California litigation reaches a final disposition. That result would frustrate the purpose of an agreement to be bound by "***any*** decision." *See Katz*, 909 F.2d at 1463 ("primary question" is whether "the disposition of one case would be dispositive of the other."). Apple's stipulation does not favor a stay.

### B. The "Flexible Approach" Weighs Against a Stay Due to the Unique Issues Between Chipsets and Consumer Devices.

Although Apple invokes the Federal Circuit's "flexible approach" to distort the customer-suit factors, the "flexible approach" is a separate inquiry that does not support a stay here. *In re Google Inc.*, 588 F. App'x 988, 991 (Fed. Cir. 2014). Under that approach, courts determine whether a stay would conserve litigation resources and judicial efficiency, even if the customer-

███████████████████████████████████

suit factors weigh against a stay.  *See Glob. Equity*, 2017 WL 365398, at *10 (citing *id.*).

Judicial economy favors this Court, which is better equipped to preside over claims relating to Apple's consumer devices.  Only this Court has experience from prior litigation that specifically relates to consumer devices, rather than components of those devices.  Apple's intends to exploit the disparity in knowledge between the courts, as evidenced by the different claim construction positions offered in the Broadcom case, despite Broadcom's representation by the very same outside counsel.  (*Compare* Ex. K *and* Ex. L (seeking construction of five terms in California and one term before this Court).)

In addition, there is no guarantee that a stay would conserve litigation resources, given differences in factual issues for chipsets and consumer devices.  For instance, indirect infringement in the California litigation is premised on the Chipset Defendants' inducement of Apple's direct infringement.  (Ex. A (contentions allege Broadcom induced customers to "make . . . sell, offer for sale, and/or import products which are interoperable according to the Bluetooth EDR Specifications.").)  Accordingly, if resolving direct infringement for Apple is necessary to prove indirect infringement by the Chipset Defendants, then staying the claims against Apple would increase the burden on the parties and the courts.  *Cf. Erfindergemeinschaft*, 2016 WL 1659924, at *4-*5 (explaining that courts have declined to apply the customer-suit exception to cases in which the manufacturer was charged as the indirect infringer of a method patent and the retailer is charged as the direct infringer).

The possibility that indirect infringement will be a central issue in the California litigation is not remote speculation.  Because chipset manufacturers often conduct various operations outside of the United States, both Broadcom and Qualcomm will likely ████████████████████████

████████████████████████████████  (*See* Ex. M.)  *See also generally Godo*

██████████████████████████████████████████

*Kaisha IP Bridge 1 v. Broadcom Ltd.*, 2017 WL 2869332, at *1 (E.D. Tex. May 18, 2017) (Broadcom arguing that chipset sales abroad did not create liability under United States patent laws).  Under that position, a factfinder could determine that the ████████████████████ ████████████████████████████████████████████████████ ██████████████ [10]  Given the possibility under this defense that Broadcom and Qualcomm are not necessarily liable ██████████████████████████, the California litigation may never reach the infringement issues of this case.  Accordingly, the California litigation does not guarantee judicial efficiency, and the "flexible approach" does not favor a stay.

### C.    The General Stay Factors Advise Against Staying This Case.

Instead of applying the customer-suit analysis, the Court should consider the general stay factors—namely: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify issues in question and trial of the case, and; (3) whether discovery is complete and whether a trial date has been set.  *Soverain Software LLC v. Amazon, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005).

First, staying the claims against Apple would unduly prejudice Rembrandt and create a tactical advantage for Apple:

- A stay would delay access to justice without any compelling justification, since the California litigation will not dispose of the claims against Apple (*see supra* Sections III.A.-B.);
- The stay and stipulation may deprive Rembrandt of the ability to prosecute claims relating to Apple's own conduct, including by denying Rembrandt of the right to independently litigate infringement ██████████████████ (*see supra* Sections III.A.-B.);
- Apple's proposed stipulation may absolve Apple of liability through unique noninfringement defenses that are unavailable to Apple (*see supra* Section III.B.);

---

[10] Notably, if the stipulation attaches Apple's liability to chipset infringement in the California litigation, then the extraterritoriality defense could absolve liability for ***all*** Apple products, even though that defense does not apply to Apple.

███████████████████████████████████████████████████

- The disparity in prior knowledge between the courts creates a tactical advantage for Apple. Apple has shown its intent to leverage this disparity to its benefit because Broadcom submitted different claim construction positions in California, despite representation by the same outside counsel as Apple (*see supra* at 10).

<u>Second</u>, a stay would not simplify the issues because Apple's own conduct is relevant to infringement, which cannot be resolved by the California litigation for several reasons:

- Apple has an *exclusive* understanding of ███████████████████ (*see supra* at 9-10);

- Apple has knowledge relevant to ██████████████████ ████████ (*see supra* at 10; Ex. E (████████████████████));

- Apple proposes a vague stipulation to avoid being bound by litigation outcomes in California (*see supra* Section III.A.3.); and

- Broadcom and Qualcomm do not have knowledge of ██████████████ ███████████████████████ (*see supra* Section III.A.1.).

In addition, California does not have access to this Court's knowledge from prior litigation, which will continue to streamline the issues in this case. Therefore, this factor weighs against a stay.

<u>Last</u>, a trial date has been set in this case and the deadline to substantially complete document production was October 21, 2019. (Dkt. No. 39, at 3.) Although Apple characterizes this case as "procedurally in its early stages," the parties have produced over 1,100,000 pages of documents (Liao Decl. ¶ 16), and Apple has made source code ████████████████ available for inspection under Local Patent Rule 3-4. Given that this case is well on its way to trial, and Apple waited to file this motion long after requesting a transfer to California, the third factor weighs against a stay.

## IV.    CONCLUSION

For the foregoing reasons, Apple's request to stay Rembrandt's claims should be denied.

████████████████████████████

Dated: November 13, 2019

Respectfully submitted,

*/s/ Amir Alavi*
Michael F. Heim (Texas Bar No. 09380923)
mheim@hpcllp.com
Eric Enger (Texas Bar No. 24045833)
eenger@hpcllp.com
Christopher First (Texas Bar No. 24095112)
cfirst@hpcllp.com
Blaine Larson (Texas Bar No. 24083360)
blarson@hpcllp.com
**HEIM, PAYNE & CHORUSH, LLP**
1111 Bagby St., Suite 2100
Houston, Texas 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021

Demetrios Anaipakos (Texas Bar No. 00793258)
danaipakos@azalaw.com
Amir Alavi (Texas Bar No. 00793239)
aalavi@azalaw.com
Scott W. Clark (Texas Bar No. 24007003)
sclark@azalaw.com
Louis Liao (Texas Bar No. 24109471)
lliao@azalaw.com
Alisa Lipski (Texas Bar No. 24041345)
alipski@azalaw.com
Kyril Talanov (Texas Bar No. 24075139)
ktalanov@azalaw.com
**AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, P.C.**
1221 McKinney Street, Suite 3460
Houston, TX 77010
Telephone: 713-655-1101
Facsimile: 713-655-0062

T. John Ward, Jr.
Texas Bar No. 00794818
jw@wsfirm.com
**WARD & SMITH LAW FIRM**
1127 Judson Road, Suite 220
Longview, TX 75601
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

16

█████████████████████████████

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned hereby certifies that the foregoing document is authorized to be filed under seal pursuant to the Protective Order (Dkt. No. 47) entered in this case.

*/s/ Louis Liao*
Louis Liao

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was filed electronically in compliance with Local Rules CV-5(a) on November 13, 2019. As such, this document was served on all counsel of record pursuant to Local Rules CV-5(a)(3)(A) and the Federal Rules of Civil Procedure.

*/s/ Louis Liao*
Louis Liao