# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT WIRELESS TECHNOLOGIES, LP, | § § § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | CIVIL ACTION NO. 2:19-CV-00025-JRG |
| APPLE INC., | | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Apple Inc.'s ("Apple") Motion to Stay Based on Customer-Suit Exception (the "Motion"). (Dkt. No. 77.) By its Motion, Apple requests that this Court stay the above-captioned action in light of suits filed by Plaintiff Rembrandt Wireless Technologies, LP ("Rembrandt") against Broadcom Corp. and Broadcom Inc. (collectively, "Broadcom") and Qualcomm Inc. ("Qualcomm") in the Central District of California. Having considered the Motion and for the reasons set forth herein, the Court is of the opinion that the Motion should be and hereby is **DENIED**.

I.  **Background**

On January 24, 2019, Rembrandt brought suit against Apple alleging infringement of U.S. Patent No. 8,457,228 and U.S. Patent No. 8,023,580 (collectively, the "Asserted Patents"). (Dkt. No. 1.) On April 15, 2019, Rembrandt brought similar suits for infringement of the Asserted Patents against Broadcom and Qualcomm in the Central District of California (the "California Suits"). (Dkt. Nos. 77-3, 77-4.)

Broadcom and Qualcomm manufacture Bluetooth chipsets that are incorporated into the majority of the Apple products accused of infringement in this action (the "Accused Products"). (Dkt. No. 77 at 3; Dkt. No. 77-1 ¶ 5; *see also* Dkt. No. 1 ¶ 29 (listing Apple products accused of infringement.) The remainder of the Accused Products use Apple-manufactured chipsets. (Dkt. No. 77-1 ¶ 5.) Apple develops the software that integrates these chipsets—those manufactured by Broadcom, Qualcomm, and Apple—into the Accused Products. (Dkt. No. 86-5 at 65:7–66:15; *see also* Dkt. No. 86-4.) The chipset and the software work together in the Accused Products to deliver the accused Bluetooth functionality. (Dkt. No. 86-7 at 12, 16.)

Asserting that Broadcom and Qualcomm are the true manufacturers and that Apple is merely a reseller, Apple asks that this action be stayed in favor of the California Suits under the customer-suit exception.

## II. Legal Standard

District courts have "the authority to consider motions to stay litigation before them under their broad equitable powers." *Intellectual Ventures II LLC v. JPMorgan Chase & Co.*, 781 F.3d 1372, 1378 (Fed. Cir. 2015). "Under the first-to-file rule, a district court may choose to stay, transfer, or dismiss a duplicative later-filed action." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012). However, the "customer-suit exception" is an exception to the first-to-file rule. *Glob. Equity Mgmt. (SA) Pty. Ltd. v. Ericsson, Inc.*, 2017 WL 365398, at *7 (E.D. Tex. Jan. 25, 2017). "Generally speaking, courts apply the customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011). "This 'customer-suit' exception to the 'first-to-file' rule exists to avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute." *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014).

In evaluating the customer-suit exception, courts consider three factors: "(1) whether the consumers in the first-filed action are mere resellers of products manufactured by the party in the second-filed action; (2) whether the customers in the first-filed action have agreed to be bound by any decision in the second-filed action, and; (3) whether the manufacturers in the second-filed action are the only source of the allegedly infringing activity or product." *Glob. Equity*, 2017 WL 365398, at *5 n.3. However, the "guiding principles in the customer suit exception cases are efficiency and judicial economy." *Spectrum Screenings*, 657 F.3d at 1357.

Additionally, in considering a motion to stay, courts evaluate: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and the trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Glob. Equity*, 2017 WL 365398, at *10.

### III. Discussion

The Court does not find that Apple is entitled to the remedy it seeks. As an initial matter the Court notes that Apple's own actions are inconsistent with the underlying policy and purpose of the customer-suit exception: that the burdens of litigation be lifted from the customer-defendant. Nor does the Court find that a stay is merited under the equitable factors specific to the customer-suit exception or applicable to stays in general.

#### A. **Apple seeks relief inconsistent with the purpose of the customer-suit exception.**

The customer-suit exception exists to remove "the burdens" of litigation from the customer, "if possible," and place them instead on "the manufacturer who is generally the 'true defendant' in the dispute." *Nintendo*, 756 F.3d at 1365. However, far from seeking to remove the burdens of litigation from itself Apple has elsewhere embraced such burden. Four days after it filed this Motion, Apple filed three petitions for *inter partes* review of the Asserted Patents before the Patent Trial and Appeal Board ("PTAB"). (Dkt. No. 87-11.) As such, Apple's requested stay would not

3

remove from Apple the burdens of litigation. Rather, Apple seeks to deprive Rembrandt of redress in its selected forum and its procedural rules while Apple continues to litigate issues related to the Asserted Patents in the forum and under the procedure of its own choosing.

This result violates the express policy and purpose of the customer-suit exception. A stay will not relieve Apple of the burdens of litigation. Apple has made that impossible. Moreover, Rembrandt will still be forced to litigate in multiple forums, here, in California and before the PTAB. Apple, who has acted to expand the litigation process, cannot now seek a stay in the name of "efficiency and judicial economy." *Spectrum Screenings*, 657 F.3d at 1357.

By acting to create such a tactical advantage for itself, Apple has foreclosed the prerequisite condition of having clean hands to receive the equitable remedy it now seeks. *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 244–45 (1933). The Court finds that it would be inequitable to suspend litigation in the plaintiff's chosen forum under the guise of relieving the burdens of litigation from the defendant while the defendant actively and intentionally pursues litigation against plaintiff in another forum.

B. **Transfer is inappropriate under the customer-suit exception.**

Even if Apple's litigation decisions had not been what they are, the exception would nonetheless be inapplicable. As to the Accused Products that utilize Apple chipsets, Apple is itself the manufacturer. It is not a customer at all. Further, as to the Accused Products that utilize Broadcom and Qualcomm chipsets, Apple is not a mere reseller but itself configures and integrates these chipset components into the consumer products accused of infringement.

1. **Apple is not a customer as to its own chipsets.**

It is axiomatic that the customer-suit exception is applied to stay "litigation against a *customer*." *Spread Spectrum*, 657 F.3d at 1357 (emphasis added). Apple is not a customer of its own chipsets but is itself the manufacturer. Apple fails the first and third customer-suit exception

factors as to Apple-manufactured chipsets: it is not a mere reseller and Broadcom and Qualcomm are not a source of the allegedly infringing products. *Glob. Equity*, 2017 WL 365398, at *5 n.3.

Apple does purport to agree to be bound by a decision in the second-filed action. (Dkt. No. 77 at 4; Dkt. No. 77-7.) However, the Apple-manufactured chipsets are not accused of infringement in the California Suits. Instead, Apple offers to be bound by any decision regarding the Broadcom-manufactured chipsets as if that decision applied to its own chipsets. The Court finds this approach unreasonable.

Apple's chipsets are not identical to Broadcom's; there is no reason to believe that infringement as to one would necessitate infringement of the other. Moreover, a plaintiff in litigation against both a manufacturer and its customer would typically be barred by collateral estoppel from relitigating an adverse infringement decision. Rembrandt should not be so estopped from litigating infringement as to the Apple and Broadcom chipsets separately and has not agreed to be bound by a decision in the California Suits. Thus, Apple's offer to be bound is unlikely to lead to the simplification of issues such an agreement would typically produce where the products at issue are truly identical.

Accordingly, the Court finds that the customer-suit exception is not applicable to the Accused Products utilizing Apple-manufactured chipsets. Indeed, considering all the Accused Products as whole, the Court finds that the presence of the Apple-manufactured chipsets proves fatal to the customer-suit analysis. However, although neither party has asked the Court to consider a severance, the Court will nonetheless consider whether severing and staying the claims as to the Accused Products utilizing Broadcom- and Qualcomm-manufactured chipsets is appropriate. *See In re EMC Corp.*, 677 F.3d 1351, 1355 (Fed. Cir. 2012) ("To be sure, Rule 21, which authorizes a

district court to 'sever any claim against a party,' provides a district court broad discretion.") (quoting Fed. R. Civ. P. 21).

### 2. Apple is not a mere reseller as to its products employing Broadcom and Qualcomm chipsets.

The Court finds that a stay as to the Accused Products utilizing Broadcom and Qualcomm chipsets is likewise inappropriate. Notably, it is not the Broadcom and Qualcomm chipsets that are accused of infringement in this case. Rather, the Accused Products are Apple-manufactured products, only some of which incorporate these chipsets as components. (Dkt. No. 1 ¶ 29.) Apple actively incorporates these components into its products, including by developing the source code that integrates and enables these chips within the Accused Products.

Apple argues that its own conduct and source code is not relevant to infringement, noting that Rembrandt's infringement contentions in this case mirror those filed in the California Suits and are based on the general Bluetooth standards. Neither party has provided the infringement contentions served in this action for the Court's review. However, that Rembrandt's initial infringement contentions are based on the publicly available Bluetooth standards does not foreclose the relevance of Apple's source code to the issue of infringement. (*See, e.g.*, Dkt. No. 40 ¶ 3(a)(i) (allowing a party to supplement its infringement contentions within 30 days of the receipt of source code).)

Indeed, the claims of the Asserted Patents recite communications devices "configured to" or "capable of" performing certain functions. *See, e.g.*, '580 Patent, Claim 1; '228 Patent, Claim 1. Whether Apple's source code integrating these chipsets enables or inhibits such functionality directly bears on infringement. Consequently, Apple is not a mere reseller of its own products that incorporate Broadcom and Qualcomm chipsets.

Similarly, the Court finds that Broadcom and Qualcomm are not the sole source of the allegedly infringing activity or product because Apple also contributes to the development of the Accused Products.

The Court does find that Apple has agreed to be bound by any decision in the California Suits. Rembrandt criticizes Apple for agreeing only to be bound by a "final judgment." (Dkt. No. 86 at 11; Dkt. No. 93 at 3.) However, any resolution on the merits in the California Suits will take the form of a final judgment, whether that occurs on summary judgment, after a jury verdict, or as the result of a preclusive decision in another forum. As to the Accused Products utilizing Broadcom and Qualcomm chipsets, the Court finds Apple's stipulation sufficient.

Nonetheless, balancing these factors the Court finds that they weigh against a stay of this action even as to the Accused Products employing Broadcom and Qualcomm chipsets.

C. **A stay in not appropriate under the general stay factors.**

A review of the general stay factors reinforces that a stay is not appropriate in this case.

As to the first factor, the Court has already noted that a stay of this action would present a tactical disadvantage to Rembrandt in view of the recently filed IPR proceedings initiated by Apple. The Court notes the institution of IPR proceedings may itself form the basis for a stay request, and the Court does not prejudge such a request, if made. However, the Court finds that these dueling proceedings weigh against the granting of a stay based on customer-suit grounds, where the purpose of such a stay is to relieve the burdens of litigation from the customer-defendant altogether.

As to the second factor, whether a stay would simplify issues for trial, the Court notes that in the California Suits, Broadcom and Qualcomm are accused of indirect infringement for selling their chipsets to customers, like Apple, who directly infringe by making and selling infringing

products that incorporate these chipsets. (Dkt. No. 86-2 at 3–4.) District courts have routinely declined to impose stays based on the customer-suit exception where a manufacturer is accused of indirect infringement and the customer is accused of direct infringement. *See Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, 2016 WL 1659924, at *4 (E.D. Tex. Apr. 26, 2016) (collecting cases). Indeed, the Court finds that the circumstances of this case are similar to those presented in *Eli Lilly*, where Judge Bryson, sitting by designation in this District, similarly declined to impose a stay. *Id.*

Moreover, the Accused Products in this action are not identical to those accused of infringement in the California Suits. Rather the chipsets accused of infringement in the California Suits are incorporated into the Apple products accused of infringement in this action. Apple integrates and enables these chipsets to perform certain functions using its own software. Thus, it is not a foregone conclusion that a resolution of the infringement issues in the California Suits would be dispositive of related issues in this action.

Finally, as to the third factor, whether discovery is complete and a trial date has been set, the Court notes that trial in this case is set for June 1, 2020. (Dkt. No. 69.) Fact discovery will close in a month and a half, and expert discovery will close in three months. (*Id.*) Moreover, the Court notes that a claim construction hearing in this action is set for next week, a hearing for which the parties and the Court have already expended considerable resources. (*Id.*)

Weighing these three factors, the Court finds that they reinforce the Court's conclusion that a stay is not warranted.

## IV.  Conclusion

For the reasons set forth herein, Apple's Motion to Stay Based on Customer-Suit Exception (Dkt. No. 77) is **DENIED**.

**So ORDERED and SIGNED this 27th day of November, 2019.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE